WASHBURN & MOEN MANUF'G Co. *v.* CINCINNATI BARBED-WIRE FENCE Co.

*(Circuit Court, S. D. Ohio.* November 8, 1884.)

1. PATENTS FOR INVENTIONS—LICENSE—ROYALTIES.

A licensee, holding under a license containing acknowledgments of the novelty and validity of the patent, and binding him to defend against the same, is estopped from denying the validity of the patent, and so long as he continues to manufacture and sell, during the life of the license, he must pay royalties.

2. SAME—FRAUD ON LICENSEE—INJUNCTION.

As the owner of the patent in this case has been guilty of fraud in concealing its arrangement with another licensee, from defendant, and allowing other parties to enter the market and reduce the profits of defendant, and at the same time exacting from him full royalties, his application for a preliminary injunction should be refused.

In Equity.

*Coburn & Thatcher* and *W. C. Goudy,* for complainant.

*James Moore,* for respondent.

SAGE, J., (*orally.*) The complainant moves for a preliminary injunction against the defendant, complainant's licensee under a license dated February 1, 1881, for the use of certain patented improvements in barbed-wire fences and in fence-wire barbing-machines. The defendant is authorized by its license to manufacture at one factory in

the city of Cincinnati, (using not more than 12 machines,). 1,200 tons per annum of barbed fence wire, of the style represented by Exhibit A, attached to license, and this wire it may sell anywhere within the limits of the United States and territories. The license contains an acknowledgment of the novelty and validity of each and all the patents, and binds the licensee not to deny or defend against the same. The licensee is bound also to make a monthly report of sales, and to pay royalty on the same at the rate of three-fourths of one cent per pound, also, not to sell below schedule prices fixed by the licensor, nor on more favorable terms of payment or delivery than those fixed by the licensor. The schedule and the terms of payment and of delivery, it is stipulated in the license, shall be fixed by the licensor, who also shall be bound by the same in all its sales within the United States and territories. The licensor reserves the right to change the schedule, and the terms upon notice as provided in the license. The licensor reserves the right to cancel the license upon 30 days' notice, in the event of the failure of the licensee to comply with its terms. Subject to this right of cancellation, the license was to continue in force for the term of 17 years, from the twenty-seventh of February, 1877. There is also a provision that the royalties to be paid shall be reduced from time to time to the lowest rates granted by the licensor to persons other than the licensee.

Affidavits produced upon the hearing of the motion are to the effect that prior to the execution of this license, in suits brought by the licensor, in the circuit court of the United States at Chicago, decrees had been rendered sustaining the validity of certain of the patents named in the license granted to defendant. One of the defendants in those cases was one Haish, and it appears from the affidavits that after decree and after the granting of the license to the defendant herein a settlement was made by complainant with him, whereby he was induced to forego an appeal, of which he had given notice, to the supreme court of the United States, upon consideration that the complainant should purchase certain barbed fence-wire patents which he held, and that he, Haish, should have a license under the patents named in the defendant's license upon special terms. Among these terms was a stipulation that he should have the right to manufacture 10,000 tons of barbed-wire fencing in one year, without the payment of any royalty upon 4,000 tons, and as to the residue upon a graduated scale of royalties, lower than those stipulated for in the license granted to the defendant in this case. The arrangement with Haish was concealed by complainant from the defendant and did not come to the defendant's knowledge until May, 1883, although the settlement with Haish was made July 26, 1881, and all this time full royalties were exacted by complainant from defendant.

It appears also from the affidavits that the complainant had secretly and at divers times and places, including Cincinnati, undersold its own schedule prices. Defendant complains also, and introduces

affidavits in support of its complaint, that complainant has failed to prosecute infringers of the patents named in the defendant's licenne, and that by reason of such failure, and of said settlement with Haish, whereby he was enabled to break, and did break, the market prices of said barbed wire, and by reason of complainant's own underselling, as aforesaid, the market became and continued to be affected to such an extent that in the fall of 1883 complainant withdrew the scale of prices, with the intimation to the defendant that it must take care of itself; and the market has been in great part supplied by unrestrained infringers, at reduced prices, so that it has been impossible for defendant to continue the manufacture and sale, and pay the royalties demanded. Wherefore, defendant has refused and will refuse to pay royalties, claiming that he has been evicted, and by cross-bill defendant prays for cancellation of the license granted to it by complainant.

It was insisted on the hearing of the motion, that the stipulation in the license in reference to fixing a schedule of prices and terms of payment and of delivery are void as being in restraint of trade and contrary to public policy. Without stopping to inquire whether the rules upon this point applicable in ordinary cases, have ever been extended to a business protected by a patent, and leaving that question for determination hereafter, it is sufficient to say that for the purposes of this motion the stipulation will be regarded as valid. It is not necessary now to pass upon the question whether the acts of trespassers can be relied upon to sustain the defendant's claim that it has been evicted, or whether they furnish any reason why the defendant should be permitted to step out from under its license into the ranks of the trespassers. It has been so repeatedly decided that it is no longer open to doubt, that a licensee holding under a license containing acknowledgments and stipulations such as are contained in the license accepted by the defendant, is estopped from denying the validity of the patents, and it is about as well settled that so long as he continues to manufacture and sell, during the life of the license, he must pay royalties.

I find that the defendant's complaints are well founded, that it was a fraud on the part of the complainant against the defendant to conceal the settlement with Haish, and exact royalties at rates to which complainant was bound to know it was not entitled, and it was a fraud also against the defendant for the complainant to secretly undersell, as it did, its own schedule rates. I find also that the complainant, in great measure, at least, by its own fault, has lost control of the market; that infringers are abroad everywhere unchecked, and unrestricted, putting their manufactures upon sale at prices compelling sharp competition and small margin of profit; and that the complainant does not, in the light of all these facts, present itself under circumstances entitling it to favorable consideration in a court of equity. The object of an injunction is to prevent irreparable injury; but how is this complainant to be benefited by enjoining this defendant from

exceeding the limit, as the affidavits show it is doing, when the defendant must pay royalty on the excess, and leaving the market to be supplied by infringers who pay no royalties, and who are at large everywhere, and without restraint or attempted restraint? It is clear to me that the complainant is in a position for which it may properly charge the responsibility upon itself, and where it can suffer no damage by having this injunction refused. At all events, its application for a preliminary injunction does not commend itself to my approval, and the motion is therefore overruled.